**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

DONALD M. BROWNING, and
GABRIELLE BROWNING, on behalf of
themselves and others similarly situated,

        *Plaintiffs*,

vs.                                                         Case No. 11-2611-EFM

COHEN, McNEILE & PAPPAS, P.C.,

        *Defendant*.

**MEMORANDUM & ORDER**

      Defendant Cohen, McNeile & Pappas, P.C., filed this Motion to Dismiss for Failure to State a Claim (Doc. 4), asking the Court to dismiss Plaintiffs' class action petition, which alleges violations of the Fair Debt Collection Practices Act,[1] the Kansas Consumer Protection Act,[2] and abuse of process.  Plaintiffs allege that Defendant committed illegal debt collection practices by charging interest in excess of the maximum statutory amount permitted in Kansas.  Because Plaintiffs' claims for relief are based on an improper reading of Kansas statutes, and because

---

[1]  15 U.S.C. §§ 1692 et seq.

[2]  Kan. Stat. Ann. §§ 50-626(a), (b)(2), (b)(8); § 50-627(a).

-1-

Plaintiffs have not presented sufficient support for the Court to conclude that a plausible claim for relief exists under the facts alleged, the Court grants Defendant's motion to dismiss.

## I.        Factual & Procedural Background

Defendant is a debt collector subject to the rules and requirements of the Fair Debt Collection Practices Act ("FDCPA").[3]   Defendant's debt collection practices include obtaining default judgments on collections actions, thereby converting debtors' consumer debt to judgment debt under Chapter 61 of the Kansas Statutes.  When Defendant obtains a judgment debt against a debtor, Defendant charges the debtor post-judgment interest at the same rate of interest as applied to the debtor's consumer debt.  Although Kan. Stat. Ann. § 16-204 prescribes specific interest rates applicable to Kansas state court judgments, the post-judgment interest rates Defendant charges often exceed these statutory amounts.  Defendant contends that this disparity is permissible under another statute because the interest rate on the underlying consumer debt represents a contract between the debtor and creditor that carries through to the judgment debt.

Plaintiffs Donald and Gabrielle Browning are representatives of a class of individuals who each owed a judgment debt for which Defendant obtained a post-judgment interest rate greater than the statutory amount.  Plaintiffs contend that the default judgments against them are subject to Kan. Stat. Ann. § 16-204, which states that "the rate of interest on judgments rendered by courts of this state pursuant to the code of civil procedure for limited actions shall be 12% per annum."  Defendant's judgment against Plaintiffs Donald and Gabrielle Browning bears interest rates of 26.15% and 23.10% respectively.[4]   The parties agree that Defendant obtained this higher

---

[3]     15 U.S.C. §§ 1692 et seq.

[4]     Although the parties' filings do not specifically state the origin of the interest rates, the court assumes from the nature of the case that the rates correspond to the interest rates on the Plaintiffs' underlying consumer debts.

rate by altering pre-written text on a public court form that originally granted "[p]ost judgment intrest [sic] at the statutory rate" to an amount that reflected the rate of interest from the debtor's underlying consumer debt.[5]   As a result, Plaintiffs filed this class action in state court, alleging that Defendant's debt collection practices constituted an abuse of process and violated the FDCPA[6] and the Kansas Consumer Protection Act ("KCPA").[7]   Plaintiffs' complaint includes nine counts against Defendant, but each count relies on the assertion that (1) Defendant is collecting post-judgment interest from Plaintiffs at a rate not allowed under Kansas law, or (2) Defendant abused judicial process when it altered the post-judgment interest provision of the standardized judgment form.   After removing the case to federal court, Defendant brought this motion for failure to state a claim upon which relief can be granted, disputing Plaintiffs' interpretation of Kansas's statutes regarding post-judgment interest rates.

## II.   Analysis

Plaintiffs request relief from two specific debt-collection practices by Defendant: (1) collecting post-judgment interest in excess of twelve percent per year, and (2) altering the language on the Johnson County uniform limited actions Judgment Form to increase the post-judgment interest rate from "the statutory rate."   Plaintiffs argue that both of these practices abuse judicial process and violate FDCPA and KCPA prohibitions against deceptive debt-collection acts and practices.

---

[5]   *See* Johnson County District Court, Tenth Judicial District of Kansas, Chapter 61 Journal Entry, *available at* http://courts.jocogov.org/forms/JE61.PDF.

[6]   Plaintiffs specifically allege violations of 15 U.S.C. §§ 1692e, which prohibits debt collectors from using any false, deceptive, or misleading representations in connection with the collection of any debt, and § 1692f, which prohibits the use of unfair practices to collect any debt.

[7]   Plaintiffs contend that Defendant violated Kan. Stat. Ann. §§ 50-626(a), (b)(2), and (b)(8), which prohibit deceptive debt collection acts and practices.

Plaintiffs' first request for relief rests on their assertion that Kan. Stat. Ann. § 16-204 controls the interest rate on Plaintiffs' judgment debts. Defendant argues that section 16-204 does not limit the interest rate on Plaintiffs' debts because Kan. Stat. Ann. § 16-205 permits a higher rate of interest if a contract between the parties to the debt specifies as such. Before Defendant obtained default judgment against them, Plaintiffs' consumer debts were subject to a contractual interest rate that exceeded twelve percent. Because Plaintiffs' consumer debts were once subject to a contract rate, Defendant argues that the debt in its current form falls within the purview of section 16-205 rather than section 16-204.

Defendant also objects to Plaintiffs' argument that altering the language of the court form constituted abuse of process and violated the FDCPA and KCPA. Defendant argues that Plaintiffs cannot, as a matter of law, be afforded relief on these grounds because Defendant's conduct was neither unfair nor deceptive—necessary precursors for a finding of liability under the FDCPA and KCPA. Accordingly, Defendant contends that Plaintiffs have not asserted claims for which relief can be granted. The Court agrees.

**A.      *Pullman* abstention does not prevent the Court from considering Plaintiffs' claims.**

Before reaching the merits of Defendant's motion, the Court must address Plaintiffs' request that the Court abstain from hearing this case because "no issues are raised that cannot be resolved in the state court and fail to protect the FDCPA claims."[8] Abstention is an equitable doctrine that permits a federal court, at its discretion, to decline or postpone the exercise of its jurisdiction in favor of state court adjudication of the case or issue.[9] The Supreme Court has

---

[8]      Pls.' Response Brief, Doc. 10, p. 4.

[9]      *Colorado River Water Conservation Dist. v. United States* (*Colorado River*), 424 U.S. 800, 813 (1976).

cautioned that abstention remains "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy," and should be applied only in limited and exceptional circumstances.[10]

*Pullman* abstention is a recognized form of abstention in which federal courts refrain from deciding cases when "difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided."[11]  This deference to the resolution of state legal issues reflects the federal courts' desire to avoid "needless friction with state policies."[12]  Courts may choose to invoke *Pullman* abstention when a case presents three characteristics: (1) the case includes both state grounds and federal constitutional grounds for relief; (2) proper resolution of the state issue is uncertain, and an erroneous decision from the federal court would disrupt state policies; and (3) the state grounds underlying the claim are capable of resolving the case or narrowing the federal constitutional issue.[13]  If a case fails to meet these criteria, the court should not abstain from exercising jurisdiction.[14]

Plaintiffs' claims do not present circumstances that support *Pullman* abstention. Plaintiffs' federal cause of action is based on the FDCPA,[15] which was enacted "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who

---

[10]  *Colorado River*, 424 U.S. at 813 (quoting *Cnty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959)); *see also United Servs. Auto. Ass'n v. Muir*, 792 F.2d 356, 360–61 (10th Cir. 2002) ("[Abstention] is an extraordinary and narrow exception to the district court's duty to adjudicate a controversy properly before it, justified only in the exceptional circumstances where resort to state proceedings clearly serves an important countervailing interest.").

[11]  *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984).

[12]  *R.R. Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 500 (1941).

[13]  *See id.*

[14]  *Muir*, 792 F.2d at 361.

[15]  15 U.S.C. § 1692.

refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."[16]  The FDCPA does not implicate a constitutional right; consequently, Plaintiffs' claims do not include both state and federal *constitutional* grounds for relief.  Case law suggests that federal courts need not abstain from deciding state law issues interwoven with nonconstitutional federal questions.[17]  Specifically, the Supreme Court has held that *Pullman* abstention is inappropriate in preemption cases because, although such cases are grounded in the Supremacy Clause of the Constitution, "[t]he basic question involved in these cases . . . is never one of interpretation of the Federal Constitution but inevitably one of comparing two statutes."[18]  The Tenth Circuit interpreted the Supreme Court's holdings to suggest that a federal court should not abstain under *Pullman* when statutory construction can resolve the legal issue.[19]  The Court therefore declines to exercise *Pullman* abstention in this case because the parties' claims present no substantial federal constitutional issue for the Court's resolution.

**B.   Plaintiffs have not stated any plausible claims for which relief can be granted.**

Plaintiffs allege Defendant violated the FDCPA and KCPA, and committed abuse of process when Defendant collected excessive judgment interest on Plaintiffs' debts and altered court forms to reflect a contractual rate of interest.   Defendant asks the Court to dismiss Plaintiffs' claims.   Under Rule 12(b)(6), a defendant may move for dismissal of any claim for

---

[16]   *Id.*

[17]   *See Propper v. Clark*, 337 U.S. 472, 490 (1949). ("Where a case involves a nonconstitutional federal issue, however, the necessity for deciding which depends upon the decision on an underlying issue of state law, the practice in federal courts has been, when necessary, to decide both issues.").

[18]   *Swift & Co. v. Wickham*, 382 U.S. 111, 120 (1965).

[19]   *See Muir*, 792 F.2d at 363 (holding that preemption issues were not "substantial federal constitutional issues for which *Pullman* abstention might be appropriate").

-6-

which the plaintiff has failed to state a claim upon which relief could be granted.[20]  Upon such

motion, the court must decide "whether the complaint contains 'enough facts to state a claim to

relief that is plausible on its face.' "[21]  A claim is facially plausible if the plaintiff pleads facts

sufficient for the court to reasonably infer that the defendant is liable for the alleged

misconduct.[22]  The plausibility standard reflects the requirement in Rule 8 that pleadings provide

defendants with fair notice of the nature of claims as well the grounds on which each claim

rests.[23]  Under Rule 12(b)(6), the court must accept as true all factual allegations in the

complaint, but need not afford such a presumption to legal conclusions.[24]  Viewing the complaint

in this manner, the court must decide whether the plaintiff's allegations give rise to more than

speculative possibilities.[25]  If the allegations in the complaint are "so general that they

encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged

their claims across the line from conceivable to plausible.' "[26]

### 1. *Plaintiffs cannot recover on the basis that Defendant collected post-judgment interest at a rate not allowed under Kansas law.*

Defendant first argues that the Court must dismiss Plaintiffs' claims because Kan. Stat.

Ann. § 16-205(a) negates Plaintiffs' claims that Defendant committed unfair debt collection

---

[20]   Fed. R. Civ. P. 12(b)(6).

[21]   *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[22]   *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[23]   *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[24]   *Iqbal*, 556 U.S. at 678.

[25]   *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (Citation omitted.)).

[26]   *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

practices by charging interest in excess of the twelve-percent rate announced in Kan. Stat. Ann. § 16-204(e)(2).  To analyze Defendant's argument, the Court must construe sections 16-205(a) and 16-204(e)(2) separately and together.  When construing these Kansas statutes, the Court will "afford weight to Kansas'[s] rules of statutory construction not only because they assist in ascertaining the intended meaning and application of the statute, but because they also embody substantive state policies."[27]  It is axiomatic that the goal of statutory interpretation and construction is to ascertain the intent of the state legislature.[28]  The court first attempts to glean the legislature's intent by examining the language of the statute.  If the plain and ordinary meaning of the statute's words and phrases renders the statute unambiguous, the court must give effect to that plain reading.[29]  If the language of the statute is ambiguous, however, then the court engages in statutory construction by looking at external sources, such as legislative history and the canons of statutory construction.[30]  A statute is ambiguous if it is reasonably susceptible to more than one interpretation.[31]  When a statute is ambiguous, courts should choose the interpretation that furthers the legislature's intent, avoids unreasonable results, and gives effect, if possible, to the entire act and every part thereof.[32]

---

[27]   *Phelps v. Hamilton*, 59 F.3d 1058, 1071 (10th Cir. 1995) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

[28]   *See Higgins v. Abilene Machine, Inc.*, 204 P.3d 1156, 1158 (Kan. 2009).

[29]   *Phillips v. St. Paul Fire & Marine Ins. Co.*, 213 P. 3d 1066, 1070 (Kan. 2009) (citations omitted).

[30]   *See Redd v. Kansas Truck Center*, 239 P.3d 66, 79 (Kan. 2010); *see also* Kan. Stat. Ann. § 77-201 (setting forth several principles of statutory construction and definitions of various terms).

[31]   *See In re Duel's Estate*, 171 P.2d 271, 273–74 (Kan. 1946).

[32]   *GT, Kansas, L.L.C. v. Riley County Register of Deeds*, 22 P.3d 600, 604 (Kan. 2001) (citations omitted).

Turning to the statutes at issue in this case, the Court must first decide whether the plain language of the statutes holds any ambiguity.  Section 16-204 says in relevant part: "Except as otherwise provided in accordance with law . . . the rate of interest on judgments rendered by courts of this state pursuant to the code of civil procedure for limited actions shall be 12% per annum."[33]  Section 16-205(a) reads as follows:

> When a rate of interest or charges is specified in any contract, that rate shall continue until full payment is made, and any judgment rendered on any such contract shall bear the same rate of interest or charges mentioned in the contract, which rate shall be specified in the judgment; but in no case shall such rate or charges exceed the maximum rate or amount authorized by law, and any bond, note, bill, or other contract for the payment of money, which in effect provides that any interest or charges or any higher rate of interest or charges shall accrue as a penalty for any default, shall be void as to any such provision.[34]

Read in isolation, the plain language of these statutes is unambiguous.  But when read together, it becomes unclear which statute controls a given case.  Both sections 16-204 and 16-205(a) contain concessionary language giving way to other law—section 16-204 begins with the prefatory language "[e]xcept as otherwise provided in accordance with law," and section 16-205(a) states that "in no case shall such rate or charges exceed the maximum rate or amount authorized by law."  No Kansas statute unambiguously sets "the" single, maximum postjudgment interest rate apparently referenced in section 16-205(a).  Therefore, it is unclear from the face of these statutes which one controls when both statutes apply to the facts of a case.

Defendant sued Plaintiffs for default under the small claims procedure act, which is found in Chapter 61 of the code of civil procedure for limited actions.[35]  The judgment at issue, then,

---

[33]   Kan. Stat. Ann. § 16-204(e)(2).

[34]   Kan. Stat. Ann. § 16-205(a) (emphasis added).

[35]   *See* Code of Civil Procedure for Limited Actions § 61-2701–02 (2012).

was rendered pursuant to the code of civil procedure for limited actions. Both sections discussing post-judgment interest apply to the judgment against Plaintiffs.[36] But applying the plain language of the statutes to this case renders them incapable of simultaneous application—under section 16-204(e)(2), the post-judgment interest rate is 12%, and under section 16-205, Defendant may collect the same interest rate that applied to Plaintiffs' underlying debt. Because the plain language of the statutes yield an ambiguous result, the Court must turn to case law and canons of statutory construction to determine which interest rate applies—the statutory rate under section 16-204(e)(2) or Plaintiffs' contractual rates. Specifically, the Court must decide whether section 16-204 is a default interest rate that yields to section 16-205(a) or "the maximum rate or amount authorized by law" that trumps section 16-205(a).

### a. Section 16-204(e)(2) is a general statute that provides the default rate for post-judgment interest, unless a more specific statute applies.

Plaintiffs argue that Kan. Stat. Ann. § 16-204(e)(2) must control the post-judgment interest rate because it is the maximum rate authorized by law. Plaintiffs contend that the contract interest rate cannot apply because it exceeds the twelve-percent rate announced in section 16-204(e)(2). And Plaintiffs argue that section 16-205(a) is a subordinate statute because it says that "in no case shall [a contractual] interest rate . . . exceed the maximum rate or amount authorized by law," and voids any contractual provision that imposes a higher rate as a penalty for default. Implicit in Plaintiffs' argument is an assertion that the twelve-percent rate listed in section 16-204(e)(2) is "the maximum rate or amount authorized by law." But neither the plain language of section 16-204 nor external sources support Plaintiffs' argument.

---

[36] *See id.* § 61-3303 ("The provisions of K.S.A. 16-201, 16-204 and 16-205, and amendments thereto, shall apply to judgments entered under the code of civil procedure for limited actions.").

First, the Kansas legislature prefaced all provisions of Kan. Stat. Ann. § 16-204 with the phrase, "Except as otherwise provided in accordance with law."  That phrase indicates that other interest rates—including higher interest rates—may supersede the provisions of section 16-204.  Second, section 16-204(e)(2) does not say that twelve percent is the *maximum* interest rate authorized by law.   And although section 16-204(e)(2) says that "the rate of interest on judgments . . . *shall* be 12% per annum,"[37] the Kansas Supreme Court has repeatedly interpreted "shall" to mean "may" within the context of certain statutes.[38]   In other words, the fact that a statute says something "shall" be done actually means that act is either mandatory or directory as the statute's context requires.[39]   Therefore, in addition to Plaintiffs' interpretation that section 16-204(e)(2) provides the maximum rate of post-judgment interest authorized by Kansas law, section 16-204(e)(2) could also be read as a *default* provision that applies to judgments, *unless* another statute or regulation imposes an alternative interest rate.

The legislative history of Kan. Stat. Ann. § 16-204 supports the interpretation that section 16-204(e)(2) is a default provision.   The Supreme Court of Kansas discussed two previous enactments of section 16-204 in *Schwartz v. Western Power & Gas Co.*[40]   At the time the court decided that case, the statute read: "All judgments of courts of this state shall bear interest from the day on which they are rendered at the rate of eight percent (8%) per annum, *except as otherwise provided*."[41]   That language is substantially similar to the present version of section

---

[37]    Kan. Stat. Ann. § 16-204(e)(2) (emphasis added).

[38]    *See Davis v. City of Leawood*, 893 P.2d 233, 239–40 (Kan. 1995); *Bell v. City of Topeka*, 553 P.2d 331, 338 (Kan. 1976); *Paul v. City of Manhattan*, 511 P.2d 244, 248 (Kan. 1973).

[39]    *See City of Kansas City v. Bd. of Cnty. Comm'rs of Wyandotte Cnty.*, 518 P.2d 403, 408 (Kan. 1974).

[40]    494 P.2d 1113, 1118–19 (Kan. 1972).

[41]    *See id.* at 1118 (emphasis added) (citation omitted).

16-204, which begins with the caveat, "Except as otherwise provided in accordance with law . . . ." Prior to an amendment that took effect in 1971, however, the statute read: "All judgments of courts of record and justices of the peace shall bear interest from the day on which they are rendered, at the rate of six percent per annum, *except as herein otherwise provided*."[42] The court found the legislature's deletion of the word "herein" from the pre-1971 version of section 16-204 to be significant:

> Since K.S.A. 16-204 was found in Chapter 16, Article 2, of the Kansas Statutes pertaining to the subject of Interest, the statute as it read prior to the amendment in 1969 would have to be interpreted as stating in effect that all judgments would bear interest at 6% per annum *except* as they might be limited by other sections of Article 2, Chapter 16. The new statute K.S.A. 1971 Supp. 16-204 eliminates the word "herein" and had the effect of broadening the exception to include any statute which might be found anywhere in the Kansas statute books.[43]

The court's interpretation of section 16-204 comports with the principle of statutory construction that "where a conflict between general and specific statutes exists, the specific statute will prevail unless it appears that the legislature meant to make the general statute controlling."[44] And the court's discussion of section 16-204 in *Schwartz* makes clear that the legislature did not intend for that statute to control, but instead actually expanded the number of statutes that can supersede section 16-204 when it amended the statute to remove the word "herein." Therefore, section 16-204 is a general, or default, statute that must give way when more specific interest-rate statutes apply.[45]

---

[42]   *Id.* (emphasis added) (citation omitted).

[43]   *Id.* at 1118–19 (emphasis added).

[44]   *In re Roth*, 7 P.3d 241, 246 (Kan. 2000).

[45]   For example, in *Meinhardt v. Kansas Power and Light Co.*, the Kansas Court of Appeals noted that a specific statute addressing the interest to be awarded in condemnation cases applied "in the stead of the more general provision of K.S.A. 16-204." 661 P.2d 820, 823 (Kan. Ct. App. 1983). Although the court in *Meinhardt* did apply the post-judgment interest provisions of section 16-204(a), it did so only because the condemnation statutes

**b.  Section 16-205(a) is a more specific statute than section 16-204(e)(2), and therefore controls the post-judgment interest rate when the two statutes conflict.**

Section 16-205(a) is a more specific statute that is in conflict with the general provisions of Kan. Stat. Ann. § 16-204(e)(2).  The plain language of section 16-205(a) says that the rate of interest specified in a contract between the parties shall apply to any judgments rendered on that contract so long as that contractual rate does not "exceed the maximum rate or amount authorized by law."  As established *supra*, section 16-204(e)(2) does not establish a maximum statutory rate of post-judgment interest.  Therefore, the statutes cannot be applied simultaneously based solely on their plain language.

Turning then to statutory construction, section 16-205(a) applies "[w]hen a rate of interest or charges is specified in any contract" and a judgment is rendered on that contract.  That subset of judgments is more specific than any judgment rendered under the code of civil procedure for limited actions.  Therefore, section 16-205(a) controls the interest rates of judgments within its purview.

Furthermore, the public policy behind section 16-205(a) supports application of that statute over the general post-judgment interest rates in section 16-204.  Generally, "Kansas courts allow the parties to choose the terms by which they will be bound under contract law."[46] Having negotiated those terms, it would be unfair for a party to escape its contractual obligations

---

did not specifically provide for post-judgment interest.  *Id.; see also Scott v. Strickland*, 691 P.2d 45, 54 (Kan. Ct. App. 1984) (discussing another statute within Chapter 16 that also applies to judgments rendered under the code of civil procedure for limited actions, and stating that "the rate of [post-judgment] interest is fixed by statute unless the parties have contracted for a different rate").

[46]  *TMG Life Ins. Co. v. Ashner*, 898 P.2d 1145, 1160 (Kan. Ct. App. 1995) (citing *Squires v. Woodbury*, 621 P.2d 443 (Kan. 1980)).

by defaulting on the contract.[47]  Section 16-205(a) is therefore "the legislature's recognition that a party is entitled to the bargained-for interest rate until paid in full."[48]

Given the public policy underlying section 16-205(a), it is unsurprising that he Kansas courts have upheld the interpretation that Kan. Stat. Ann. § 16-205(a) trumps section 16-204 in the few cases that discuss the interaction between the two statutes.  First, in *ARY Jewelers, L.L.C. v. Krigel*, the Kansas Supreme Court explicitly cited section 16-205(a) when it stated, "[W]hen parties do agree upon an interest rate, then that rate generally applies both prejudgment and postjudgment until payment is made in full."[49]  Although the court concluded that no valid agreement existed between the parties, the court did not qualify its earlier assertion that section 16-205(a) allowed a contractual interest rate to apply to postjudgment interest.

Plaintiffs argue that the Kansas Supreme Court's discussion of post-judgment interest in *ARY Jewelers* supports their position that the application of section 16-205(a) is limited by section 16-204.  Plaintiffs contend that because the court in *ARY Jewelers* cited section 16-205(a) when stating that the parties' agreed-upon interest rate "generally" applies to awards of post-judgment interest, the court implied that there are times when other provisions supersede section 16-205(a).  Combining the court's use of the word "generally" and the language in section 16-

---

[47]     *See, e.g.*, Kan. Stat. Ann. § 16-201 ("Creditors shall be allowed to receive interest at the rate of ten percent per annum, when no other rate of interest is agreed upon, for any money after it becomes due . . . ."); *Scott*, 691 P.2d at 54 (discussing section 16-201 and noting that "the rate of [post-judgment] interest is fixed by statute unless the parties have contracted for a different rate"); *see also Wagon v. Slawson Exploration Co.*, 874 P.2d 659, 665 (Kan. 1994) (holding that an increase in a post-default interest rate from eighteen to twenty-four percent was valid under Kan. Stat. Ann. § 16-205 because the "parties freely contract[ed] for a higher interest rate upon the occurrence of a default . . . and that higher interest rate [was] not otherwise illegal").

[48]     *Carnes v. Meadowbrook Exec. Bldg. Corp.*, 836 P.2d 1212, 1219 (Kan. Ct. App. 1992) (holding that the court could not alter the post-judgment interest rate as a matter of equity because Kansas case law prevents courts from overriding statutes when the legislature has made a statement of public policy contrary to the court's actions).

[49]     85 P.3d 1151, 1158 (Kan. 2004).

-14-

205(a) that says the rate of interest cannot "exceed the maximum rate or amount authorized by law," Plaintiffs imply that this Court should read *ARY Jewelers* as supporting their argument that section 16-204(e)(2) sets the maximum legal rate of post-judgment interest at twelve percent. But Plaintiffs neglect the most obvious interpretation of the above-quoted language from section 16-205—that it is a reference to other provisions in the law that expressly call for a specific post-judgment interest rate. For example, several Kansas statutes mandate interest rates specific to claims pursued under that statute, or set a maximum rate of interest for contracts and loans such that section 16-205(a) could not apply if the parties previously contracted for a higher interest rate.[50] Other statutes prohibit recovery of post-judgment interest.[51] And many statutes *specifically* state that any award of post-judgment interest must follow the rates prescribed in section 16-204.[52]

Alternatively, Plaintiffs argue that the discussion of Kan. Stat. Ann. § 16-205(a) in *ARY Jewelers* is dicta that should not apply here. The Court agrees that the relevant portion of the court's opinion in ARY Jewelers is dicta. Nevertheless, it is instructive as to the interplay between sections 16-204 and 16-205(a). Furthermore, the court's discussion in *ARY Jewelers* formed the basis of a recent opinion from the Kansas Court of Appeals that further supports the interpretation that section 16-205(a) supersedes the default interest rates found in section 16-204.

---

[50]   *See, e.g.*, Kan. Stat. Ann. § 40-3110 (stating that, under the Kansas Automobile Injury Reparations Act, "[a]ll overdue payments shall bear simple interest at the rate of eighteen percent (18%) per annum"); *see also* Kan. Stat. Ann. § 16a-2-404 (limiting the interest on payday loans for $500 or less to 15%).

[51]   *See, e.g.*, Kan. Stat. Ann. § 44-566a(e)(3), *accord Wrex v. T.G. & Y.*, 766 P.2d 1294, 1295–96 (Kan. Ct. App. 1989) (holding that the Kansas Workers' Compensation Act does not permit recovery of post-judgment interest).

[52]   *See, e.g.*, Kan. Stat. Ann. § 12-1,115 (stating that Kansas cities may obtain judgments against debtors for unpaid levies and receive "any award of postjudgment interest in accordance with K.S.A. 16-204, and amendments thereto").

In *Master Finance Co. of Texas v. Pollard*, a plaintiff-creditor obtained a default judgment against a defendant-debtor in Missouri.[53]   The Missouri state court ordered post-judgment interest to continue at the 199.91% rate provided in the parties' loan agreement.[54]   The Kansas Court of Appeals overturned the Kansas district court's attempt to alter that rate to the statutory rate provided in Kan. Stat. Ann. § 16-204(e)(1).[55]   Analyzing a conflict of laws issue, the appellate court held that Kansas law would also require the debtor to pay the contractual interest rate:

> [W]hen no postjudgment interest has been set forth in the contract or the judgment itself, the law of Kansas applies in determining what the postjudgment interest shall be.  But Kansas law states that when a contract provides a specific interest rate, that interest rate continues "until full payment is made, and any judgment rendered on any such contract shall bear the same rate of interest or charges mentioned in the contract, which rate shall be specified in the judgment." K.S.A. 16–205(a).  The "parties can agree upon a different rate of interest from the postjudgment rate fixed by statute."   Such an agreement existed here.  Accordingly, because the Missouri judgment includes the applicable interest rate in the judgment itself, there is no conflict and the judgment as a whole, including the postjudgment interest rate, must be given full faith and credit.[56]

The court's holding in *Pollard* clearly states that section 16-205(a) supersedes the default interest rates enumerated in section 16-204(e).

Considering *in toto* (1) the caveat in the introduction of section 16-204 and its earlier enactments, (2) the legislative purpose underlying section 16-205(a), and (3) Kansas state case law, the Court concludes that Kan. Stat. Ann. § 16-205(a) is the applicable statute when

---

[53]   ___ P.3d ___, 2012 WL 2361770, at *2 (Kan. Ct. App. June 22, 2012).

[54]   *Id.*

[55]   Section 16-204(e)(1) states that the interest rate on judgments rendered pursuant to the Kansas Code of Civil Procedure will be at a rate per annum that is calculated against the discount rate and published by the secretary of state every July.  Section 16-204(e)(2) is excepted from this rate.

[56]   *Pollard*, ___ P.3d at ___, 2012 WL 2361770, at *5 (internal citations omitted).

considering the appropriate post-judgment interest rate on Defendant's default judgments against Plaintiffs.  Therefore, Defendant did not engage in any unfair, illegal, fraudulent, or deceptive debt collection practices by obtaining post-judgment interest rates against Plaintiffs in excess of twelve percent.  To the extent Plaintiffs' claims rely on that legal theory, Plaintiffs have failed to state a claim against Defendant.  Unless the nine counts of Plaintiffs' complaint can stand on their theory of abuse of process, the Court must grant Defendant's motion to dismiss this action.

### 2. *Plaintiffs have failed to allege sufficient facts to support their claim of abuse of process.*

Plaintiffs' claims of abuse of process stem from Defendant's use of a standardized form provided to the public by the Tenth Judicial District of Kansas.  The form contains a Journal Entry and Judgment Form for small claims brought pursuant to Chapter 61 of the Kansas Code of Civil Procedure, which governs limited actions.[57]  The Judgment Form contains pre-written terms as well as blank spaces for the parties to fill in the relevant case-specific information.  One of these terms orders the plaintiff to pay "[p]ost judgment intrest [sic] at the statutory rate."[58]  Defendant does not contest Plaintiffs' allegation that Defendant altered this term in an unspecified manner to impose post-judgment interest at the rate specified in Plaintiffs' underlying consumer debt contracts.  Plaintiffs allege that alteration of the uniform Judgment Form constitutes an abuse of process.

Plaintiffs' pleadings are unclear as to their precise theory of recovery for abuse of process.  First, the complaint includes a specific count, Count 5, that is entitled "Abuse of Process" and alleges the following:

---

[57]   *See* Johnson County District Court, Tenth Judicial District of Kansas, Chapter 61 Journal Entry, *available at* http://courts.jocogov.org/forms/JE61.PDF.

[58]   *Id.*

> Defendant made an illegal, improper or unauthorized use of process that it knew to be illegal, improper or unauthorized when it obtained judgements [sic] for amounts not authorized by law. . . .  Defendant made the illegal improper or unauthorized use of process for the purpose of harassment, to cause great inconvenience and/or great hardship to the Plaintiffs and the class by obtaining judgments [sic] interest rates that exceed the maximum amount allowed by law."[59]

Count 5 appears to be a claim under common law because it does not cite any provisions of the FDCPA or KCPA, and the language tracks the elements of an abuse of process claim under Kansas law.[60]  But Plaintiffs' memorandum in response to Defendant's motion to dismiss argues that the "abuse of process" theory supports Plaintiffs' claims for liability under the FDCPA and KCPA.[61]  Specifically, Plaintiffs contend that "Defendant's practice of changing court forms to indicate that a contractual rate of interest is in fact a 'statutory' rate of interest also violates the FDCPA and KCPA as a deceptive act and practice."[62]  The Court finds that Plaintiffs have failed to state a claim under either theory, and will address each argument in turn.

### a.   Plaintiffs failed to state a common-law abuse-of-process claim for which relief may be granted.

First, Plaintiffs have failed to state a claim for relief under the common law theory of abuse of process.  To show abuse of process, a plaintiff must prove that the plaintiff suffered damages after defendant knowingly made an illegal, improper, or unauthorized use of process for

---

[59]   Compl. filed in state court, Doc. 1-1, p. 10, ¶¶ 47–48.

[60]   *See, e.g.*, *McShares, Inc. v. Barry*, 970 P.2d 1005, 1015 (Kan. 1998), *cert. denied* 526 U.S. 1158 (1999) ("The essential elements of the action [for abuse of process] are a knowingly illegal or improper use of the process done for the purpose of harassing or causing hardship, which resulted in damage to the state court plaintiff.").

[61]   *See* Pls.' Response Brief, Doc. 10, p. 2 ("Thus, separate from Plaintiffs' claims under the first issue, the second issue of whether Defendant engaged in deception related to how the interest rate is characterized on judgments is on its own grounds for liability under the FDCPA and KCPA.").

[62]   *Id.*

the purpose of harassing or causing great inconvenience or hardship to the plaintiff.[63]   The Kansas Supreme Court has affirmed that a plaintiff cannot sustain a cause of action for abuse of process when "[t]he post judgment activities of the defendant were conducted in accordance with the provisions of Chapter 61 of the Kansas Statutes Annotated and the rules, practices and procedures" of the court.[64]

Rule 16 of the local rules for the Tenth Judicial District of Kansas outlines the court procedures for Chapter 61 cases.  That rule explicitly tells the parties: "An approved Journal Entry form and instructions are posted on the Court's website and *shall be used in all cases*. Blank Journal Entry forms will be made available at each docket call by the Clerk's Office."[65] Rule 16 makes clear that parties pursuing judgments under Chapter 61 of the Kansas Code of Civil Procedure must use the court's uniform Journal Entry, which contains the Judgment Form at issue in the present case.  As the Court previously established in this case, Kan. Stat. Ann. § 16-205(a) governs the post-judgment interest rate applicable to the Chapter 61 default judgments against Plaintiffs.   Furthermore, the arguments presented in this motion are proof that the meaning of the phrase "[p]ost judgment intrest [sic] at the statutory rate" is anything but plain; both parties to this suit argued that a Kansas statute—either section 16-205(a) or section 16-204(e)(2)—provided the applicable post-judgment interest rates.   Rather than leaving an ambiguous term in the Judgment Form, Defendant changed the offending provision to reflect the

---

[63]   *See McShares, Inc.*, 970 P.2d at 1015.

[64]   *Porter v. Stormont-Vail Hospital*, 621 P.2d 411, 416 (Kan. 1980); *see also Davis v. Nebraska Furniture Mart, Inc.*, 2012 WL 1252633, at *4–5 (D. Kan. Apr. 13, 2012) (dismissing the plaintiff's abuse-of-process claim because the plaintiff's factual allegations showed that the defendant acted "in conformance with statutory procedures and for a purpose sanctioned by Kansas law").

[65]   10th Jud. Dist. Kan. R. 16(5) (emphasis added); *see also* Kan. Stat. Ann. § 61-2713 ("The forms to be utilized under the small claims procedure act shall be set forth by the judicial council.").

appropriate interest rate, as permitted by Kan. Stat. Ann. § 16-205(a).  Because it comports with Kansas law and the local rules for actions under Chapter 61, the substance of Defendant's alteration was not an abuse of process.

Furthermore, Plaintiffs do not cite, and the Court has not found, any cases that prohibit a party from physically altering pre-written terms in a publicly-available court form.  In fact, in the Court's experience, such alterations are commonplace.   Plaintiffs' claim of abuse of process as presented in  Count 5 of the complaint is not a claim for which relief can be granted.  Because Defendant's conduct comports with the law, Plaintiffs cannot prove that Defendant made an illegal, improper, or unauthorized use of process.  Therefore, Plaintiffs failed to state a common-law abuse-of-process claim for which relief can be granted.

> **b.** **Plaintiffs failed to present a plausible claim for relief under the FDCPA and KCPA on the basis of Defendant's alleged abuse of process.**

Second, even if the Court grants Plaintiffs leeway and reads the complaint as asserting a violation of the FDCPA and KCPA due to abuse of process, Plaintiffs cannot survive Defendant's Rule 12(b)(6) motion to dismiss.  Plaintiffs claim that Defendant misrepresented and deceived them because Defendant altered the court form "to state the interest being collected is 'statutory' and not contractual."[66]  But Defendant's alterations were neither misrepresentative nor deceptive.

---

[66]   Pls.' Response Brief, Doc. 10, p. 10.   The Court notes that neither party submitted any exhibits showing an altered Judgment Form, so the Court does not know precisely how the relevant provision was changed. Plaintiffs' argument could be moot if Defendant crossed out the pre-written term in its entirety, thereby deleting the word "statutory" from the judgment.  But on this motion for dismissal, the Court will assume Plaintiffs' judgment forms still ordered Plaintiffs to pay Defendant a "statutory" rate of post-judgment interest.

A "statutory" rate is one "[e]nacted, regulated, or authorized by statute."[67]  Here, a statute authorized the award of post-judgment interest at the rate previously negotiated between the parties in the underlying contract for Plaintiffs' consumer debt.[68]  Accordingly, Defendant was entitled to collect interest at a "statutory" rate—even if the applicable statute was not the one advocated by Plaintiffs—and that statutory rate should be reflected in the parties' Judgment Forms.  Furthermore, abuse of process generally involves "some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt."[69]  Plaintiffs do not allege that they were confused, let alone exploited, by Defendant's line-item alteration of the court's Journal Entry and Judgment Form.  Because Defendant did not make false or deceptive representations on court orders or otherwise abuse judicial process, Plaintiffs cannot establish a violation of the FDCPA or KCPA.

In conclusion, when Kan. Stat. Ann. §§ 16-204(e)(2) and 16-205(a) cannot be applied simultaneously, case law and the canons of statutory construction, support the application of section 16-205(a).  Applying section 16-205(a) in this case, Defendant was entitled to obtain post-judgment interest at the rate specified in the Plaintiffs' consumer debt contracts.  Accordingly, Defendant did not abuse judicial process, misrepresent the law, or deceive Plaintiffs when Defendant altered the post-judgment interest provision of the district court's uniform Journal Entry and Judgment Form.  Because all nine counts of Plaintiffs' complaint rested on the theory that Defendant either abused judicial process or violated federal and state debt collection laws by collecting post-judgment interest at the rate specified in Plaintiffs'

---

[67]  *See The American Heritage Dictionary of the English Language* 1707 (5th ed. 2011).

[68]  *See* Kan. Stat. Ann. § 16-205(a).

[69]  Restatement (Second) of Torts § 682 cmt. b (1964).

original consumer debt contracts, the Court grants Defendant's motion to dismiss the complaint for failure to state a claim.

**IT IS ACCORDINGLY ORDERED** this 18th day of September, 2012, that Defendant's Motion to Dismiss (Doc. 4) is hereby **GRANTED**.

**IT IS SO ORDERED**.

*Eric F Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE